IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VALENCIA BROWDER, } | |
| } | |
| Plaintiff, } | |
| } | CIVIL ACTION NO. |
| v.  } | 04-AR-3135-S |
| } | |
| SALLY BEAUTY COMPANY, INC., } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

The court has before it motions for summary judgment filed by both parties and a motion by defendant, Sally Beauty Company, Inc. ("Sally"), to strike affidavits submitted in opposition to summary judgment. Sally's motion for summary judgment challenges every claim brought by plaintiff, Valencia Browder ("Browder"). Browder's complaint claims a racially hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, retaliation for her complaints regarding the racial harassment, the tort of outrage, negligent and/or wanton retention, and negligent and/or wanton supervision. Browder seeks summary judgment as to Sally's affirmative defense, pursuant to *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275 (1998), to the hostile environment claim. Browder has abandoned her claim for retaliation, rendering Sally's motion for summary judgment moot as to this aspect of her complaint.

Sally's motion to strike a number of affidavits submitted by Browder in opposition to Sally's motion for summary judgment is

moot for the reasons that follow.

### *Facts*[1]

In January 2004, Browder, a black female, was hired to work in Sally's store in Hoover, Alabama. Throughout her employment, her immediate supervisor was the store manager, Patsy Gross ("Gross"), a white female. Sharon Miller ("Miller") was the district manager for the district encompassing the Hoover store during the same time period, and Rick Dobson ("Dobson"), was the territory manager. Nancy Albright ("Albright") and Chuck Engle ("Engle") held the positions of Human Resource Specialist and Human Resource Director, respectively.

During her first week of employment, Browder attended an orientation session where she received a copy of the Sally Employee Handbook. The handbook includes a section titled "Freedom from Harassment and Discrimination Policy," which includes Sally's harassment policy as well as the proper procedure for lodging a complaint against another employee. Although the official policy is to report any harassment to the human resources department, Miller, Albright, and Engle admit that it was appropriate, and in

---

[1] Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing whether the movant has met its burden, the court must view the evidence, and all inferences drawn therefrom, in the light most favorable to the non-movant. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). In accordance with this standard, this statement of facts includes both undisputed facts and, where there is a dispute, the facts according to the non-movant's evidence, and the legitimate inferences therefrom.

2

fact common, for an employee to report harassment to her immediate supervisor, district manager, or territory manager.

Soon after Browder was hired, Gross began harassing Browder. At various times between January and early March 2004, Browder alleges that Gross: (1) scolded another black employee because "All y'all do is have baby after baby"; (2) asked the same employee, when she requested to miss work to take her children to the doctor, "Why can't the children's father take them to the doctor? Is he in jail?"; (3) in response to a request by another black employee to sign a Section 8 housing form, remarked "All y'all black asses want is something for nothing"; (4) during that same conversation, said that she "knew [Browder and the other black employee] were from the same tribe"; (5) told Browder and another black employee that "There's a place for y'all; stay in your place"; (6) referred to certain types of music as "nigger music"; (7) called Browder a "nigger"; (8) called Browder a "black uppity bitch"; (9) pushed Browder; and (10) threatened Browder.

The last four allegations of harassment occurred in conjunction on March 8, 2004. On that day, Browder came to work for her shift, but was told by Gross that she was not scheduled to work. The two then argued over Browder's schedule, and as the fight escalated, Gross called Browder a "nigger" and a "black uppity bitch," and told her to leave the store. Browder left and went to another Sally store, where Dobson was working. Browder

claims that she then informed Dobson of the racial slurs Gross had used, but Dobson remembers Browder complaining only that Gross was "being mean to her" by not accommodating her scheduling requests. After speaking with Miller on the telephone, Dobson sent Browder back to the Hoover store, where she met with Miller in the parking lot.  Browder and Miller disagree as to whether Miller was aware of the racially charged characteristics of Gross's conduct at that time.  Upon entering the store, Miller resolved the scheduling disagreement and left Browder and Gross to finish their shifts.

At the end of the day, Browder tried to leave but could not find her car keys.  When Browder found them in the trash can, a fight broke out between Gross and Browder.  Gross yelled at and pushed Browder, and threatened further action if Browder did not leave the store.  Gross claims that she pushed Browder only because Browder was standing on her foot at the time.  Browder called the police, and then called Dobson, who returned to the store with Miller.  At this time, Browder reported Gross's conduct to Miller and Dobson, specifically mentioning Gross's racial slurs and their offensive nature.  Sally launched an investigation of the incident which culminated in a termination warning for Gross, but no recommendation of termination for either employee.  Because Sally did not have an open store manager position in the district, Miller informed Browder that she would be transferred to a store in Roebuck, a suburb of Birmingham, Alabama, but would retain the same

position, hours, and pay. Although the Roebuck store was closer to her residence than the Hoover store, Browder refused the transfer and resigned her employment with Sally. Browder claims that she refused the transfer because Roebuck is a more dangerous area than Hoover, but she applied to work for a number of businesses in the area after resigning from Sally.

Browder had reported Gross's conduct to Miller before March 8. In January, the month Browder began work, she called Miller. She says that she told her Gross had used profanity and racial slurs in the workplace. Miller claims that during this conversation Browder only mentioned Gross's profanity and that Gross was "talking to her any kind of way." Miller did not discipline Gross as a result of this complaint. In February, when Browder disagreed with Gross's scheduling, she attempted to report the problem by relaying a message through another Sally employee, Karima Collins ("Collins"), who was on the phone with Miller. Browder never actually spoke with Miller, and did not try to contact her again until March 8. Sally had also received two customer complaints against Gross in January 2003. Although both accused Gross of being a racist, one complaint was anonymous while the other included only a last name, and neither customer provided any contact information.

During the course of this litigation, Sally learned that Browder lied on her employment application, by listing, among other inaccuracies, that she had completed courses at Jefferson State

Community College. Sally first learned of these lies on or about February 9, 2005, when Jefferson State sent a letter to Sally confirming that Browder had not attended the college. Sally's employee handbook and its employment application specifically state that an employee can be terminated for falsifying an employment application.

*Analysis*

I. **Hostile Environment**

The claim brought by Browder under Title VII or § 1981 for hostile environment racial harassment requires her to show (1) that she belongs to a protected class; (2) that she has been subjected to unwelcome harassment; (3) that the harassment was based on her race; (4) that "the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999). If Browder can carry her *prima facie* burden, Sally can avoid liability by proving "(a) that [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by [Sally] or to avoid harm otherwise." *Faragher*, 524 U.S. at 807, 118 S. Ct. at 2293. Because all reasonable inferences must be drawn in favor of the non-movant,

6

summary judgment is due to be denied both as to Browder's claim and to Sally's affirmative defense.

The requirement of sufficient severity and pervasiveness is the sticking point in Browder's *prima facie* case. That she is a member of a protected class and was subjected to unwelcome harassment as a result of her class are not seriously debatable. In addition, if Gross, as Browder's immediate supervisor, created a hostile environment, Sally is vicariously liable for the consequences flowing from that environment. *Id*. As to the severity of Gross's harassment, Browder must prove (1) that it was an objectively hostile environment, and (2) that she subjectively perceived the environment to be hostile or abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22, 114 S. Ct. 367, 370 (1993). Although the court weighs the totality of the circumstances in determining the objective severity of the harassment, four factors typically indicate whether discrimination is sufficiently severe and pervasive to be actionable: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). First, Browder has produced admissible evidence that she witnessed at least ten incidents of racial harassment during her roughly two-

month employment with Sally.[2] Although Sally argues correctly that a number of the incidents occurred in tandem, there are nevertheless a substantial number of unique events of harassment. Second, the racial epithets were frequently directed at Browder, and on at least one occasion--March 8, 2004--were accompanied by the threat of physical violence and the actualization of such violence. Third, although the majority of Gross's harassment was verbal, it escalated to a physical altercation on March 8. Fourth, Browder alleges nothing meaningful in the way of an impact on her work performance, but this omission is not fatal. Under the circumstances, a reasonable jury could find that Gross's harassment was so objectively severe and pervasive as to be actionable. In addition, the reasonable inference from Browder's reporting of the slurs to Miller and Dobson is that she subjectively perceived the environment to be hostile. Summary judgment is inappropriate as to Browder's *prima facie* claim for hostile environment racial harassment.

As stated, Sally bears the burden of proving the elements of its *Faragher* affirmative defense, but also enjoys the benefit of all reasonable inferences from the summary judgment record. *Faragher* first requires a defendant to prove that it "exercised

---

[2] Sally's argument that a number of Gross's statements--"there is a place for y'all and you should stay in your place," for example--are race-neutral ignores their context. Considering Gross's history of bigoted behavior, a logical inference is that these facially neutral comments were in reality racial slurs.

reasonable care to prevent <u>and</u> correct promptly any . . . harassing behavior." 524 U.S. at 807, 118 S. Ct. at 2293 (emphasis added). To prove that it took reasonable precautions to prevent harassment, Sally must show that its "harassment policy was effectively published, that it contained reasonable complaint procedures, and that it contained no other fatal defect." *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1314 (11th Cir. 2001). Sally's employee handbook contains a detailed harassment and discrimination policy, including a complaint process. Browder does not dispute that she was aware of that policy or allege that it suffers from any defect. Sally has carried its burden with respect to this component of its affirmative defense.

As to the requirement that it corrected promptly any harassment, Sally must show that "it acted reasonably promptly on [Browder's] complaint when it was given proper notice of her allegations as required under its complaint procedures." *Id*. Because the record evidence does not clearly indicate when Sally can be charged with notice of Gross's racial harassment, the propriety of Sally's response must await the evaluation of a fair-minded jury. It is undeniable that Sally had sufficient notice *no later than* the evening of March 8, 2004, when Browder informed Miller and Dobson of the altercation occurring that day and, according to Miller and Dobson, first mentioned the racial nature of Gross's harassment. Sally responded by separating Gross and

9

Browder pending an investigation, issuing a termination warning to Gross, and transferring Browder to a store closer to her home where she would not interact with Gross.  If this is the first time that Sally had notice of Gross's racial harassment, then a reasonable jury could find that its response was appropriate and it is entitled to the *Faragher* defense.  Browder argues, however, that Sally was on notice of Gross's harassment prior to the evening of March 8, 2004, and that its response at that time was not reasonable.  Browder's phone call to Dobson on the morning of March 8, 2004, cannot be considered proper notice for summary judgment purposes, because the court must infer from the conflicting testimony of Dobson and Browder that Browder did not mention Gross's racial slurs at this time.  Browder's phone call to Miller in January 2004, alerting her that Gross had used profanity and talked to Browder "any kind of way," is too vague to prove definitively Sally's knowledge when Miller claims that Browder did not mention any racial slurs during that conversation.  Browder additionally offers the phone call between Miller and Collins--with Browder relaying information through Collins--as proof of Sally's notice.  The record evidence indicates that this conversation put Sally on notice of, at best, nothing more than a disagreement over scheduling, not of a racially hostile environment. Browder finally proffers the customer complaints against Gross, but the evidence indicates that these complaints suffered from problems of

10

reliability, and thus carry little probative weight without corroboration. None of the evidence offered by Browder can prove with any degree of certainty that Sally had proper notice of Gross's racial harassment prior to March 8, 2004. For purposes of summary judgment, the court concludes that Sally responded reasonably promptly when it became aware of the hostile environment created by Gross.

The second prong of the *Faragher* defense is phrased in the disjunctive: "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by [Sally] or to avoid harm otherwise." 524 U.S. at 807, 118 S. Ct. at 2293 (emphasis added). A fair-minded jury could find that Browder's refusal to accept a lateral transfer to the Roebuck store was unreasonable because Browder's new position would have been identical in every respect, but her commute would have been shorter. Browder's argument that she preferred not to work in the Roebuck area because of its crime rate is vitiated by her admission that she subsequently applied for work with a number of business in that location. Because Browder failed to take advantage of the corrective opportunity offered to her by Sally, Sally's *Faragher* defense is viable and Browder's motion for summary judgment against it is due to be denied.

**II. Tort of Outrage**

To hold Sally liable under Alabama tort law for Gross's

allegedly outrageous conduct, Browder must prove that Gross committed the underlying tort of outrage, and then must show why Sally should be held vicariously or directly liable for that tort. Under Alabama law, the tort of outrage has three elements: "(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; and (3) the distress was severe." *Perkins v. Dean*, 570 So. 2d 1217, 1219 (Ala. 1990). Because Browder has not offered proof upon which a jury could find that Gross's conduct was extreme and outrageous, her *prima facie* case is deficient, and any discussion of Sally's derivative liability is academic.

The Alabama courts maintain a narrow view of what conduct is sufficiently "extreme and outrageous" to support a claim for outrage, heretofore limiting the cause of action to three specific applications: "1) cases having to do with wrongful conduct in the context of family burials . . . ; 2) a case where insurance agents employed heavy-handed, barbaric means in attempting to coerce the insured into settling an insurance claim . . . ; and 3) a case involving egregious sexual harassment." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993). While Gross's harassment fits none of these archetypes, the argument could be made that racial harassment and sexual harassment are sufficiently analogous that the tort of outrage should be expanded

to include both forms of discrimination.  Such an expansion may be warranted at another time and with a different set of facts,[3] but on the record evidence before this court, no reasonable jury could find that Gross's behavior was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980).  Summary judgment is due to be granted as to Browder's claim for outrage.

**III.  Negligent/Wanton Retention**

Browder alleges a claim for negligent and/or wanton retention against Sally.  Under Alabama law, an employer "must use due care to avoid the . . . retention of an employee whom he knows or should know is a person unworthy, by habits, temperament, or nature, to deal with the persons invited to the premises by the employer." *Brown v. Vanity Fair Mills, Inc.*, 277 So. 2d 893, 895 (Ala. 1973).  Sally's employees qualify as invitees while on its premises. *Sledge v. Carmichael*, 366 So. 2d 1117, 1118 (Ala. 1979).  Therefore, Sally

---

[3] The evidence introduced in the cases in which the Alabama Supreme Court has held that an allegation of sexual harassment could amount to outrageous conduct has been markedly more egregious than the evidence presented by Browder. *See, e.g., Busby v. Truswal Sys. Corp.*, 551 So. 2d 322, 324 (Ala. 1989) (recounting in detail the history of harassment visited upon the plaintiff subordinate employees, but refusing to impute that harassment to the employer through any theory of direct or vicarious liability); *Henry v. Georgia-Pacific Corp.*, 730 So. 2d 119, 121 (Ala. 1998) (holding that sexual harassment could be sufficiently outrageous when a psychiatric counselor provided by the defendant employer, *inter alia*, forced a female employee to simulate an orgasm while hypnotized, and the employer conditioned her continued employment upon attending future counseling sessions even after learning of this and other inappropriate sexual conduct).

owes a duty to Browder not negligently or wantonly to retain any unworthy employee. For summary judgment purposes, the court must conclude that Browder has satisfied her burden as to the other elements of her negligence cause of action as well--breach, causation, and injury--but not as to her wanton retention claim.

The genuine issue of when Sally can be charged with proper notice of Gross's persistent harassment again rears its head in this context. If Browder can prove that Sally knew or should have known of Gross's incompetence prior to March 8, 2004, then Browder can also prove that Sally breached its duty to exercise due care in retaining such an unworthy employee because Sally took effectively no remedial action prior to March 8. A reasonable jury could additionally find a causal link between Sally's failure to act and Browder's injuries from the continued harassment. Browder's negligent retention claim survives summary judgment.

Browder's *wanton* retention claim, however, fails as a matter of law. Browder has ignored this claim in her summary judgment materials, and in any event the record cannot reasonably be construed to support the conclusion that Sally behaved with "reckless or conscious disregard of the rights or safety of others." Ala. Code § 6-11-20(b)(3) (1975). Summary judgment is due to be granted on Browder's claim for wanton retention.

### IV.  Negligent/Wanton Supervision

As with her claim for negligent retention, Browder's claim for

negligent supervision requires proving that Sally "had notice or knowledge (actual or presumed) of [Gross]'s alleged incompetency for [it] to be held responsible." *Perkins v. Dean*, 570 So. 2d 1217, 1219-20 (Ala. 1990). Once put on notice, Sally had a duty to exercise due care in supervising Gross. Genuine issues exist with respect to the timing of Sally's knowledge of Gross's incompetence, the appropriateness of its response, and the causal link between that response and Browder's injuries. Summary judgment is due to be denied on Browder's claim for negligent supervision. There is again no evidence in the record indicating Sally acted recklessly or with conscious disregard for Browder's rights, and therefore summary judgment is due to be granted on her claim for wanton supervision.

## V.   After-Acquired Evidence

Pursuant to the after-acquired evidence doctrine announced in *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 115 S. Ct. 879 (1995), Sally argues that Browder cannot accrue damages after February 9, 2005, when it first learned that Browder had falsified her employment application. Because the *McKennon* doctrine is applicable to misrepresentations on employment applications, *Wallace v. Dunn Const. Co., Inc.*, 62 F.3d 374, 379 (11th Cir. 1995), Sally need only prove that "the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of

15

the discharge." *McKennon*, 513 U.S. at 362-63, 115 S. Ct. at 886-87.  Because Sally's employee handbook specifically lists the falsification of an employment application as terminable conduct, and the application itself reminds prospective employees of their obligation to be truthful, Sally has carried its burden in this respect.  The fact that Browder does not address this argument in her opposition brief underscores the court's conclusion.  Summary judgment will be granted to Sally on Browder's claims to the extent she seeks any damages accruing after February 9, 2005.

**VI.  Motion to Strike**

The court also has before it the motion by Sally to strike a number of affidavits offered by Browder in support of her brief in opposition to Sally's motion for summary judgment.  The information contained therein is relevant to only two material issues at the summary judgment stage: when Sally had proper notice of Gross's racially hostile behavior, and whether that harassment was sufficiently severe and pervasive to be actionable under Title VII and § 1981.  Even assuming their veracity, the affidavits do not resolve conclusively the question of when Sally can be charged with notice of Gross's harassment.  In addition, for summary judgment purposes, the court has already found in Browder's favor on the issue of the severity of the hostile environment.  For these reasons, the motion to strike will be deemed moot.

*Conclusion*

In accordance with the foregoing, Browder's motion for summary judgment as to Sally's *Faragher* defense will be denied by separate order. Sally's motion for summary judgment will be denied in part and granted in part. Sally's motion to strike is moot.

DONE this 16th day of June, 2006.

                                               _____
                                               WILLIAM M. ACKER, JR.
                                               UNITED STATES DISTRICT JUDGE